IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ahmad Jebril, | No. CV 10-002-TUC-FRZ (JCG) |
| Petitioner, | **REPORT & RECOMMENDATION** |
| vs. | |
| Conrad Graber, | |
| Respondent. | |

Pending before the court is a Petition for Writ of Habeas Corpus brought pursuant to Title 28, United States Code, Section 2241.[1] The petitioner, Ahmad Jebril, currently confined in the Safford Federal Correctional Institution ("FCI") in Safford, AZ alleges his rights were violated during a disciplinary hearing and requests that his Good Conduct Time credits be restored. Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Guerin for a Report and Recommendation. Before the Court are the Petition (Doc. No. 1) and Respondent's Answer. (Doc. No. 10.) Petitioner did not file a reply. For the reasons set forth below, the Magistrate recommends that the District Court deny the Petition.

---

[1] 28 U.S.C. § 2241 is the federal habeas corpus statute that permits a prisoner to challenge his imprisonment on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. *See generally Peyton v. Rowe*, 391 U.S. 54 (1968).

**Factual and Procedural Background**

Petitioner is currently serving a 70-month sentence from the Eastern District of Michigan for fraud, tax and weapons related charges.[2] (Answer, exhibit 1, attachments 2.) He was previously incarcerated at FCI Three Rivers, Texas, from August 13, 2007, through October 20, 2009. (Answer, exhibit 1, ¶ 2 & attachment 1.) His Good Conduct Time release date is April 1, 2012, assuming he earns all available Good Conduct Time. (Answer, exhibit 1, ¶ 2 & attachment 2.)

On May 16, 2008, after reviewing transcripts of Petitioner's translated telephone calls, reviewing incoming money orders and out-going emails, and interviewing other inmates, Intelligence Officer George Hernandez concluded Petitioner instructed his wife to send money to several other inmates at FCI Three Rivers, Texas. (Answer, exhibit 1, ¶ 3 & attachment 3 - Incident Report Packet at 10.) A copy of Officer Hernandez' May 16, 2008 incident report was delivered to Petitioner that same day; the report indicates it was delivered to Petitioner later that day. (Answer, exhibit 1, attachment 3 - Incident Report Packet at 7.)

On May 19, 2008, Petitioner appeared before the Unit Disciplinary Committee ("UDC"). He was provided a copy of BP-S293.05 Inmate Rights at a Disciplinary Hearing. (Answer, exhibit 1, attachment 3 - Incident Report Packet at 10.) Petitioner requested a staff representative, and one was appointed. (Answer, exhibit 1, attachment 3 - Incident Report Packet at 11.) He also requested the presence of one witness, his wife Mnal Jebril, at the DHO proceeding. (*Id.*) Based on the seriousness of the charge, the UDC referred this matter to the Discipline Hearing Officer ("DHO"). (Answer, exhibit 1, attachment 3 - Incident Report Packet at 6.)

On June 3, 2008, Petitioner appeared before DHO Charles Bickle with his staff representative, James Van Horn. (Answer, pg. 3). Petitioner stated he had nothing to do with

---

[2] Defendant was convicted of Conspiracy to Defraud (18 U.S.C. § 371), Felon in Possession of a Firearm (18 U.S.C. § 1343), Bank Fraud (18 U.S.C. 1344), Laundering Monetary Instruments (18 U.S.C. § 1956), Willful Failure to File Income Tax Returns (26 U.S.C. § 7203) and Fraudulent Use of a Social Security Number (42 U.S.C. § 408). (Answer, pg. 2.)

- 2 -

the matter and that he never told his wife to send money to any inmates and referred to her letter indicating that Petitioner had not told her to send money to the other inmates. Petitioner also indicated his wife changed her name in 2005. (Answer, exhibit 1, attachment 3 - Incident Report Packet at 3-5, 13-14.) DHO Bickle found Petitioner guilty of the charged offense. DHO Bickle based this finding on the fact that three inmates admitted that Petitioner requested to have money placed on their commissary accounts and they would then purchase commissary items for Petitioner. Additionally, the name and address on the money orders was his wife's maiden name and her address. The DHO also noted that on the day Petitioner spoke with his wife on the telephone, they referenced 105 as being the combination on a suitcase. On this same day, one of the inmates received a money order for $105.00. (Answer, exhibit 1, attachment 3 - Incident Report Packet at 3-4.) DHO Bickle imposed the sanctions of loss of 27 days of Good Conduct Time, loss of e-mail privileges for 180 days, loss of commissary privileges for 180 days and loss of telephone privileges for 180 days. (Answer, exhibit 1, attachment 3 - Incident Report Packet at 5.) A copy of the DHO Report was delivered to Petitioner on August 8, 2008. (Answer, exhibit 1, attachment 3 - Incident Report Packet at 5.)

On January 5, 2010, Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 alleging various violations of his due process rights during his disciplinary proceeding. (Answer, pg. 2.) Specifically, Petitioner claims that: (1) he was not provided with a copy of the Discipline Hearing Officer (DHO) report until August 21, 2008 (about 2 ½ months after the DHO proceeding); (2) he was taunted and threatened by staff members with water boarding; (3) he did not receive all documents necessary to defend himself against the incident report allegations; (4) he received ineffective assistance from his staff representative at his DHO proceeding; (5) he did not receive a written copy of the charges within 24 hours of the incident; (6) he was not provided the witnesses he requested for the DHO proceeding; (7) a staff member threatened to take away his telephone and e-mail privileges before he received the incident report in this matter; (8) he did not have an impartial DHO because DHO Bickle had a previous disciplinary matter against Petitioner overturned; and (9) DHO Bickle refused to introduce certain evidence or allow him to call requested witnesses demonstrating that the other inmates

received money on their prison accounts from a person identified as Abdelwali, which is his wife's former legal name, not her current legal name. (Petition at 5-7.)

**Discussion**

**1.     Due Process Requirements in a Prison Disciplinary Hearing**

The United States Supreme Court has established five procedural safeguards for inmates when the loss of Good Conduct Time credits are involved: (1) an inmate must receive written notice of the infractions(s) at least 24 hours before the disciplinary hearing; (2) an inmate has a right to call witnesses unless it would be unduly hazardous to institutional safety or correctional goals; (3) an inmate is entitled to assistance in preparing and presenting a defense to the disciplinary charge; (4) an inmate is entitled to a copy of the disciplinary findings; and, (5) the inmate has a right to have a sufficiently impartial decision maker. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). Review of the record indicates that these procedural safeguards were met in the present case.

According to Respondent's records, Petitioner received a copy of the incident report on May 16, 2008, the same day the incident report was written. (Answer, exhibit 1, ¶ 3 & attachment 3 - Incident Report Packet at 6-7.)[3] Although Petitioner disputes that he received the Report on this date, he admits that he did receive a written copy of the incident report on May 20, 2008 (Petition, Doc. 1, p. 9), which was well in advance of the June 3, 2008, hearing before Disciplinary Hearing Officer Charles Bickle.

Petitioner's right to call witnesses was honored. Although Petitioner claims that he requested that numerous witnesses be called and that the UDC refused to list all of his witnesses at the UDC hearing, Petitioner fails to provide any evidence in support. Petitioner appears to have requested only one witness (his wife) at the time his rights were presented to him by the UDC. Petitioner's wife sent a letter that was included at the DHO proceeding. In the letter,

---

[3]The Discipline Hearing Officer Report also refers to March 27, 2008 as the date of incident. The date of March 27, 2008, is referred to as the "Date of Incident" on the first page of the report and in box 4, on page 6 of the report. (Doc. 7-1 at 11,16.) However, at another point, the Discipline Hearing Officer Report indicates that March 27, 2008, was the date "Advanced written notice of charge (copy of Incident Report) was given to inmate." (Doc. 7-1, pg. 11.)

- 4 -

Petitioner's wife stated her husband never asked her to send anyone money at the prison. (Answer, exhibit 1, attachment 3 - Incident Report Packet at 13.)[4]

Petitioner was provided with assistance in preparing and presenting his defense. Petitioner requested a staff representative, and James Van Horn was appointed. (Answer, exhibit 1, attachment 3 - Incident Report Packet at 11.) On May 19, 2008, Mr. Van Horn received BPS306.52 - Duties of Staff Representative which outlined his duties in representing Petitioner. (Answer, exhibit 1, attachment 3 - Incident Report Packet at 9.) There is no evidence that Mr. Van Horn did not fulfill these requirements.

Petitioner was provided with a copy of the DHO report on August 8, 2008. (Answer, exhibit 1, attachment 3 - Incident Report Packet at 5.) DHO reports are generally delivered to the inmate within 20 days following the hearing. Petitioner's receipt of his DHO report was considerably delayed. However, Petitioner has not provided any information regarding how this delay in receiving a copy of the DHO report impacted his ability to appeal this matter.

Petitioner was provided an impartial DHO. Due process requires that decision-makers in prison disciplinary proceedings be impartial and not have direct personal involvement in the incident that forms the basis of the hearing. *Wolff*, 418 U.S. at 592 (1974); *Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983). "An official who is directly involved in the incident or is otherwise substantially involved in the incident should be disqualified, but an official who is only tangentially involved need not be disqualified." *Piggie v. Hanks*, 98 F.Supp.2d 1003, 1007 (N.D. Ind. 2000). DHO Bickle was not involved in the investigation of money being sent to other inmates. The investigation was conducted by George Hernandez. (Answer, exhibit 1, ¶ 3 & attachment 3 - Incident Report Packet at 6.) Thus, DHO Bickle was an impartial decision-maker under the definition set forth in *Wolff v. McDonnell*, supra. The fact that DHO Bickle had a previous disciplinary matter against Petitioner overturned does not, without more, show impartiality.

---

[4] As the DHO noted, Petitioner's wife never disputed that she sent money to other inmates at the facility - only that Petitioner asked her to do so; notably, her address and maiden name were evident on the transmittal documents.

Finally, the Court notes that the sanctions imposed by DHO Bickle – loss of 27 days good conduct time, 180 days e-mail privileges, 180 days commissary privileges and 180 days telephone privileges – were all within limits established for discipline as authorized in 28 C.F.R. § 541.13. Table 3.

**2.     The "Some Evidence" Standard of Review for Prison Disciplinary Hearings**

As Respondent details in his Response, in disciplining prisoners, the requirements of due process must be balanced with the legitimate institutional needs of assuring the safety of inmates, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving a disciplinary process as a means of rehabilitation. *Superintendent Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454-455 (1985). A prisoner is not entitled to all the rights afforded a criminal defendant. *Ponte v. Real,* 471 U.S. 491, 495 (1985). Judicial review of a prison disciplinary decision is limited to situations where it is shown that the prison officials acted in an arbitrary and capricious manner. *Marchesani v. McCune*, 531 F.2d 459, 462 (10th Cir. 1976). The "some evidence" standard of review for disciplinary proceedings does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. *Hill*, 472 U.S. at 455.

The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. *Hill*, 472 U.S. at 456. Due process requirements are satisfied if "some evidence" supports the decision of the prison disciplinary board. *Hill*, 472 U.S. at 455. A court may overturn the decision only if no reasonable adjudicator could find the defendant guilty of the offense on the basis of the evidence presented. *Henderson v. United States Parole Commission*, 13 F.3d 1073, 1077 (7th Cir. 1994). The standard is minimally stringent only requiring any evidence in the record that supports the conclusion reached by the disciplinary board. *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (citing *Hill*, 472 U.S. at 454- 456) (referring to *Hill* evidence as "meager" but sufficient).

The evidence supporting DHO Bickle's determination that Petitioner committed the infractions exceeds the "some evidence" standard required in disciplinary proceedings. Bickle

relied on evidence that money orders were sent by a person with Petitioner's wife's maiden name and from her current residence. He relied on evidence of a coded telephone calls between Petitioner and his wife wherein numbers stated in the calls corresponded with amounts of money subsequently deposited by Petitioner's wife in other inmates' accounts.. (Answer, exhibit 1, ¶ 3 & attachment 3 - Incident Report Packet at 3-4.) He relied on the statements of three other inmates who had admitted that Petitioner asked them to use their commissary accounts for his benefit.[5] This evidence is more than some evidence supporting the conclusion that Petitioner gave money to another person without staff authorization and used the telephone for abuses other than criminal activity.

**Conclusion**

Based on the foregoing, the Magistrate Judge recommends that the District Court enter an order DENYING the Petition for Writ of Habeas Corpus (Doc. No. 1).

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV 10-002-TUC-FRZ**.

The Clerk is directed to mail a copy of the Report and Recommendation to Petitioner and counsel for Respondents.

DATED this 3rd day of May, 2010.

_____
Jennifer C. Guerin
United States Magistrate Judge

---

[5] Petitioner asserts that he requested, but prison officials refused to produce, these inmates at the hearing. Even if the inmates' statements are not taken into account, the evidence supports the finding that Petitioner instructed his wife to send money to several other inmates at the facility. As noted by Petitioner himself, his wife did not know the other inmates. Logically, unless she was acting under Petitioner's direction, she would not have sent money to inmates who she did not know in amounts that corresponded exactly with figures Petitioner and his wife discussed that same day in a phone call.